BOYER, TYRIE A., Associate Judge.
We here consider an appeal by the defendants in a replevin action from a judgment entered in favor of the plaintiff. The parties will be referred to as they stood in the trial court.
The basic facts are not in dispute. The plaintiff is an air-conditioning contractor. In 19S5 it sold three Chrysler air-conditioning units to a purchaser whose name was never revealed by the evidence, which units were installed in the Lido Spa Hotel, located at 40 Belle Isle, Miami Beach, Florida. On September 6, 1960 the hotel was acquired by Monterrey Enterprises, Inc., a Florida corporation which was the wholly owned subsidiary of National Capital Corporation, whose address is 350 Lincoln Road, Miami Beach, Florida. On March 16, 1961 plaintiff sold certain air-conditioning equipment to National Capital Corporation. The sale was accomplished via an instrument which *218 is referred to in the briefs as a contract, which contract was never received into evidence. The parties, in their briefs, agree that the contract described National Capital Corporation as purchaser, designating its address as 350 Lincoln Road, Miami Beach, and that neither the name nor the address of Monterrey Enterprises or the Lido Spa Hotel appear thereon. They also agree that the contract was recorded in the Official Records of Dade County, Florida on March 23, 1961.
On May 18, 1961 Monterrey Enterprises executed and delivered to defendants a mortgage encumbering the Lido Spa Hotel and the personal property located therein.
On May 10, 1962 plaintiff sold additional air-conditioning equipment to National Capital Corporation. The contract by which the sale was accomplished was not admitted into evidence, but the parties, in their briefs, agree that the name Monterrey Enterprises, Inc. does not appear in the contract, though it is recited that the property will at all times be kept at 40 Belle Isle, Miami Beach, Florida. It is further agreed that the contract describes five items of air-conditioning, three of which were the Chrysler air-conditioning units which were sold by the plaintiff to an unnamed purchaser and installed in the Lido Spa Hotel in 1955. This latter contract was recorded in the Official Records of Dade County on September 27, 1962.
Upon default by Monterrey Enterprises, Inc., a foreclosure proceeding was instituted by the defendants which culminated in a purchase by them of the Lido Spa Hotel at the foreclosure sale on July 1, 1963.
The plaintiff thereafter sought to re-plevin from defendants the equipment which was described in the two contracts above mentioned. It is from the judgment entered in that action that the present appeal was taken. The equipment sold by plaintiff in 1955 and thereafter included in the 1962 contract was not included in the judgment.
The appellants assigned numerous errors and argued ten separate points in their brief. However, the primary bone of contention relates to the nature and effect of the two contracts above mentioned. The-plaintiff claims that it retained title and was entitled to regain possession upon the-purchaser defaulting. The defendants deny that the contracts were either conditional sales contracts or retain title contracts.
In order to ultimately resolve the-issues involved in this case we find it necessary to consider the applicability of Florida Statute 726.09, F.S.A., which is a part of the Statute of Frauds adopted by Florida- and numerous other states from the English statute against fraudulent alienations. (Hudnall v. Paine, 39 Fla. 67, 21 So. 791.) Although the statute had its genesis in England and has been a part of our statutory law since 1823, it has received the favor of few judicial interpretations. We have carefully examined every case which has been brought to our attention or which careful research reveals wherein the Appellate Courts of this state -have construed the statute and many other cases from the highest courts of other jurisdictions having the same or a similar statute.
The subject statute provides as follows:-
“When any loan of goods and chattels shall be pretended to have been made-to any person with whom or those claiming under him, possession shall have remained for the space of two years without demand and pursued by due process, of law on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use or property by way of condition, reversion, remainder or otherwise in goods and chattels, and the possession thereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this chapter, and the absolute property shall be with the possession, unless such loan, *219 reservation or limitation of use or property were declared by will or deed in •writing proved and recorded.”
The Supreme Court of Alabama, construing a similar statute containing a three year provision rather than a two year period as provided in the Florida Statute, in Carew v. Love’s Adm’r, 30 Ala. 577, cited and approved by the Supreme Court of Florida, in Hudnall v. Paine, supra, and Dillon v. Mizell Live Stock Co., 66 Fla. 425, 63 So. 824, held, in a detinue action by an owner of a slave against defendants -who purchased the slave at an execution sale against a loanee who had possession of the slave under a loan from the owner, that the right or title of the lendor of personal property cannot, under the statute, be in any manner affected by any act or ■contract of the loanee, unless such act be ■done, or such contract be made, after the •possession under the loan has continued for •the statutory period. That court further “held the principal to be equally applicable 'to a creditor of the loanee. The case is -particularly enlightening in view of its ■specific holding that the fact that credit has "been extended on the faith of the property •does not bring the case within the statute; ¡the court stating as follows:
“The circumstances that credit has been :given on the faith of the property, does not bring the case within the statute. Joy v. Campbell, 1 Sch. & Lef. 328. That circumstance might belong to a variety ■of cases obviously not within the statute. 'Thus, B. might hold a slave and a horse ■of A. under a loan, for two years only; ■at the end of the two years, A. might ■resume and continuously retain the possession of the property; but during the two years, B. might obtain credit on the faith of the property. In such case, the statute certainly would not authorize the persons who had become the creditors of B. on the faith of the property, to subj ect it to the payment of their demands against him. To entitle the creditor of the loanee, under the statute, to divest the title of the lender, by a sale under legal process against the loanee, it is essential that the credit be given, or the liability contracted, after the completion of three years from the commencement of the loan.”
******
* * * “a sale under legal process against the loanee, for a debt contracted before the loan has continued for three years, does not by virtue of the statute, divest the title of the lender.”
******
“There is no evidence tending to show that the loanee either contracted a debt, or made a sale, after his possession had continued for three years. The entire claim and defense of the defendants rest upon a sale under legal process against the loanee, for a debt contracted by him before his possession had continued for three years. Under the statute above cited, that sale conferred no title on the defendants, and did not affect the title of the lender. Upon the uncontroverted facts of the case, the plaintiff was clearly entitled to recover.” (Emphasis by writer of that opinion)
The Supreme Court of Florida, in Campbell Printing Press & Mfg. Co. v. Walker, 22 Fla. 412, 1 So. 59, recognized that in Florida the question as to whether a contract is in its legal effect a mortgage or a conditional sale (or retain title contract) is of particular importance by reason of the fact that a mortgagee is not entitled to acquire possession of mortgaged property except by purchase at a foreclosure sale. That case involved a suit by a conditional vendor against the assignee of the personal property of the conditional vendee; the conditional sale having been made on May 8, 1883 and the property having been retained by the vendee until April 24, 1884, when the vendee made an assignment of all property of every kind and description to the defendants for the payment of the vendee’s debts. The court held, after first holding the contract there under consideration to *220 have been a conditional sale contract as distinguished from a mortgage or absolute bill of sale, that the contract, as against creditors and bona fide purchasers would be void under the predecessor to Florida Statutes 726.09, F.S.A. if not recorded in two years after delivery of possession to the buyer. Considering the exact question involved in the case sub judice, the court stated :
“The only remaining question is, is such a conditional sale as the one under consideration valid as to subsequent judgment creditors and purchasers for valuable consideration without notice? This is a question upon which there is great conflict in the authorities.
“In the case of Jackson Sharpe [Sharp] Co. v. Holland [14 Fla. 384] supra, Holland was the purchaser, at a judicial sale, of property in possession of the purchaser, in which the seller had reserved title. Holland insisted that he had no notice, either actual or constructive, of such an agreement. The court decided that under these circumstances, Holland acquired no title to the property as against the plaintiff. This decision, — though, as we have said, there is much conflict in the authorities, — is sustained by numerous and well-considered decisions in many states, and seems to us to be sound on principle. The property not having vested in the Ashmeads, though delivered to them, they could not sell what they did not own, nemo dat quod non habet. In this case, if we were to hold that a bona fide purchaser from a purchaser in possession from a seller who reserved title until payment of purchase money, took a good title, it would not benefit the defendant in this case. He is in no sense a bona fide purchaser. He can have no greater rights in the property than the Ashmeads, whose assignee he is. They could not dispose of the property in payment of their debts.” (1 So. 64)
In Hudnall v. Paine, supra, the Supreme Court of Florida considered a case wherein one Keep took possession of a piano on January 20, 1887 under a conditional sale instrument from one Paine, which piano was-maintained by Keep in a room rented by her from Hudnall. On October 11, 1890 Paine repossessed the piano and removed it from the premises. Hudnall claimed the piano under a distress proceeding for delinquent rent and Paine claimed under his retention of title. The instrument had not been recorded. The evidence also revealed that Hudnall was acquainted with the fact that the piano had not been paid for and that it belonged to Paine. The Supreme Court of Florida held that the trial court erred in: admitting into evidence the conditional bill of sale as evidence of Paine’s right to recover the piano, saying :
“The case of Gay v. Moseley, 2 Munf. [Va.] 543, decided in 1811, holds that, when the property remained more than, five years (the time limited in the Virginia statute) in the possession of the loanee, without the required demand made-on the part of the lender, it must be considered the absolute property of the person so retaining possession as to creditors- and purchasers under him, and that notice on their part did not change the result. The opinion says: ‘And as to the notice which is alleged in the bill of exceptions to have existed in the creditor-under whose execution the appellee purchased, and in the said appellee himself, of the existence of the said deed of trust, the court is further of opinion that,, under the true construction of the act aforesaid, the lapse of five years’ possession, as aforesaid, was intended to-shut up and conclude all inquiries as-to such notice, and to avoid the perjuries arising therefrom, in relation to-controversies between persons claiming the property loaned as aforesaid under the lender, and the creditors of and purchasers under the persons so remaining-in possession.’ ”
******
“It made no difference if Mrs. Hudnall' did have notice that the piano had not *221 been paid for, as she had the right, after the expiration of two years’ possession by Florence Keep, to treat it as her property, and seize it for rent due for the use of the premises.”
******
“The court erred in admitting the written instrument to go to the jury as evidence of appellee’s right to recover the piano, after it was shown without contradiction that Florence Keep had been in possession for more than two years under the conditions stated, and the case should not have been submitted to the jury on the theory of the statute adopted by the trial court.” (21 So. 793-794)
In Onyx Soda Fountain Co. v. L’Engle, 53 Fla. 314, 43 So. 771, the Supreme Court of Florida held that the fact that the purchaser from a conditional vendee in possession for more than two years by virtue of an instrument not “proven for record” had notice that the property had not been paid for was immaterial.
The facts in Dillon v. Mizell Live Stock Co., supra, are remarkably similar to the case sub judice. There a mule was sold by the plaintiff by conditional sale contract dated January 10, 1910. The vendee in possession gave a mortgage to the defendant on December 30, 1911, the mule continuing in the possession of the vendee mortgagor. The opinion is silent as to what thereafter occurred, but in due course an action was commenced by the conditional vendor against the mortgagee to determine the priority of their respective claims. A judgment was entered for the plaintiff vendor and the defendant mortgagee appealed. The Supreme Court of Florida affirmed, citing Carew v. Love’s Adm’r, supra, stating:
“We think the analysis of the Alabama statute, by Chief Justice Rice, speaking for the court in Carew v. Love’s Adm’r, supra, conclusive upon the construction of the Florida statute, and that ‘creditors who claim, under the statute, to subject one man’s property to the payment of another’s debt must bring themselves strictly within the statute. The statute in question does not confer that extraordinary privilege on all classes of creditors of a loanee, but only on that class in whose favor a debt or liability was contracted after the loan had continued for at least three (two) years.’
“In Hudnall v. Paine, supra, we held that after the expiration of two years, the lender or conditional vendor could protect himself only by record notice as against creditors and purchasers, and now we hold that a mortgage executed by the conditional vendee in possession before the expiration of the statutory period confers no rights upon the mortgagee, as against the conditional vendor, not possessed by the mortgagor.
“Taking this view of the statute, it is unnecessary to say whether the conditional sale was properly proved for record; and the judgment is affirmed.”' (Emphasis by the writer of the opinion) (63 So. 825)
The principle that we glean from an examination of the foregoing cases is-that it is not necessary for a vendor of personal property who reserves title to prove or record the instrument by which title is reserved in order to protect such vendor’s interest as against third persons obtaining a lien or interest via the vendee-within two years after the date that the vendee is placed in possession; and that whether or not such third party so gaining an interest or lien within such period of time had notice, actual or constructive,, of the reserved title in the vendor is immaterial.
The parties in the case sub judice having agreed in their briefs that the defendant’s mortgage interest arose within two years, after Monterrey Enterprises, Inc. acquired possession of the property described in the 1961 contract, and before acquisition of *222 the property described in the 1962 contract, it is immaterial whether the instrument 'by which the transaction was consummated was recorded; therefore the several points •argued regarding the validity of the purported acknowledgment, recording, and notice are immaterial and we do not find -it necessary to consider them further.
We have not overlooked the fact that although the defendant’s mortgage interest was acquired within two years after the -date that Monterrey Enterprises, Inc. first became possessed of any of the property for the possession of which judgment was •entered, the judicial sale by which they claim ownership, as distinguished from a mortgage interest, occurred more than two years after such date. However, this fact is immaterial and does not change the result. (Carew v. Love’s Adm’r, supra)
Although we have taken a different •avenue of approach and based our holding upon Florida Statute 726.09, F.S.A. and the •cases which have construed that statute, instead of holding said statute inapplicable, our decision is consistent with that of our sister court of the Second District in Richardson Tractor Company v. Square Deal Machinery & Supply Company, Fla.App. 1963, 149 So.2d 388, wherein under a somewhat analogous factual situation essentially the same conclusion was reached.
Of course the conclusion at which we have arrived is applicable to the case sub .judice only if there was a reservation of 'title in the plaintiff. ' In view of the tacit agreement of the parties that the sales by the plaintiff were accomplished by written ■contracts, we know of no way by which the trial judge, before whom the case was tried without a jury, or we, may determine whether or not there was a reservation of title without being afforded an opportunity to examine such contracts.
The record reveals that upon the plaintiff offering into evidence the 1962 contract it was received, over objection of the defendants, and marked as Plaintiff’s Exhibit No. 13. Thereafter the plaintiff offered the 1961 contract which was also‘ objected to by the defendants whereupon the trial judge made the following statement:
“I will let it be marked but for identification only and I will change my mind about the other one and do the same thing with it.”
Thereupon the record reveals that the 1962 contract theretofore received into evidence as Plaintiff’s Exhibit No. 13, was stricken from the evidence and marked as Exhibit No. 1-B for identification, and the 1961 contract was marked as Exhibit 1-C for identification.
The law is so well settled as require no citation of authority that a court may not rest its judgment upon matters dehors the evidence and a contractual right may not be enforced unless the contract be proved by competent evidence.
It being apparent that we must reverse, we will attempt, for the guidance of the litigants and the trial court to consider such other of the points involved in this appeal as are material and as may be resolved without the benefit of the contracts themselves.
The defendants argue that the items described in the final judgment are fixtures as distinguished from personalty and are therefore part of the realty not subject to replevin. It has been said that it is not possible to state any absolute rule as to the character of air-conditioning equipment and other such apparatus as the character varies with differing circumstances. (See an excellent annotation appearing in 43 A.L.R.2d at page 1378; 14 Fla.Jur., Fixtures, § 3; and Corbett v. Appliance Buyers Credit Corp., Fla.App. 1965, 172 So.2d 257) Our examination of the record reveals substantial competent evidence to support the trial judge’s finding that such items were personalty.
The final judgment provided that the plaintiff recover from the defendants possession of the property therein described
*223 “or in the alternative [the plaintiff] shall have and recover of and from the said defendants the true value of said property, which this court finds to he in the sum of $38,116.00.”
The judgment further provides as follows:
“That in addition to the foregoing, the plaintiff is entitled to recover from the defendants, * * * as damages for the unlawful detention of the equipment in question, the sum of $12,000.00, which this court finds to be the reasonable use value of the equipment in question during the period of wrongful detention.”
The defendants urge that there is no basis in the evidence for the figures arrived at by the trial judge. We have carefully examined the record and must concede that we too are unable to discover any formula by which the evidence may be construed to support the amounts recited.
Finally the defendants contend that when a plaintiff in a replevin action elects to employ “the alternative procedure” set out in Florida Statute 78.01, F.S.A. leaving possession with the defendant during the course of the litigation rather than obtain the issuance of a writ of replevin, the court is without authority to enter a judgment in favor of the plaintiff for the value of the property.
This point was resolved by this court in First National Bank of Miami v. First Bonded Warehouse, Fla.App.1965, 174 So.2d 606, wherein it was stated:
“The provision for a money judgment is not applicable to a situation where the plaintiff elects to leave the property in the hands of the defendant and deprives the defendant of the choice. The portion of § 78.01, Fla.Stat., F.S.A. which is determinative here is the phrase ‘seizure of the property involved shall be had only after judgment, such judgment to be in like form and tenor * * *.’ We construe the words ‘such judgment to be in like form and tenor’ as modifying the clartse ‘seizure of the property involved shall be had only after judgment’. Therefore the judgment referred to is only a judgment for the seizure of the property. We hold that the entry of a judgment for the value of the property is not within the contemplation of that portion of § 78.01 which provides for a judgment for possession without the use of a writ of replevin.” (174 So.2d 608)
The plaintiff argues that the holding in the last cited case merely prohibits a plaintiff who proceeds under the alternative method from securing possession plus value. In other words, plaintiff argues that had the alternative method not been employed, the plaintiff would be entitled to recover possession of the property and, in addition thereto the value thereof. We do not so-construe the statute nor the case above-cited. It is clear that a plaintiff in a re-plevin action is never entitled to double recovery; that is, recovery of both possession and value. When the alternative method of procedure is employed, a plaintiff is,, according to the case last above cited, entitled to a judgment for possession only. If' the other method of procedure is employed,, viz.: if a writ of replevin is issued and the property seized, the plaintiff is, if successful, entitled to a judgment for possession- and value, but he is entitled to a satisfaction' of the judgment by either possession or receipt of the value of the property, but not: both.
The case is reversed and remanded for further proceedings consistent herewith.
Reversed.